UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**04 11903 JLT**

J. P. BRENTWOOD CLIVEDEN

    Plaintiff

    v.

MAGISTRATE JUDGE Cohen

CDM CLINICAL DATA MANAGEMENT
DEUTSCHLAND GmbH f/k/a/ TEAMWORKS
COMMUNICATION SYSTEMS GmbH,
CDM CLINICAL DATA MANAGEMENT UK LTD,
f/k/a TEAMWORKS CLINICAL SERVICES LTD.,
TEAMWORKS CLINICAL SOLUTIONS, LTD,
TEAMWORKS CLINICAL SERVICES, INC.,
TEAMWORKS CLINICAL SOLUTIONS
INTERNATIONAL, INC., TEAMWORKS CLINICAL
SOLUTIONS PRIVATE LTD, and DR. THOMAS
HEINA,

CIVIL ACTION

RECEIPT # 58335
AMOUNT $ 150
SUMMONS ISSUED Yes 10
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 09/01/04

    Defendants.

and

MERCK & CO., INC.,

    Reach and Apply Defendant.

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

### Nature of the Action

1.     This is an action for breach of contract; action in reliance; promissory estoppel; quantum meruit, unjust enrichment and termination of employment in violation of public policy. Plaintiff also seeks a reach-and-apply attachment against monies owed by reach-and-apply defendant, Merck & Co., to the primary defendants. In connection with the reach and apply attachment, plaintiff seeks preliminary and permanent injunctions enjoining payment to, and receipt of, monies owed by Merck & Co. to defendants up to the amount of the claim herein.

enjoining payment to, and receipt of, monies owed by Merck & Co. to defendants up to the amount of the claim herein.

**Jurisdiction and Venue**

2. This Court has jurisdiction over this action under 18 U.S.C. § 1332 because it is an action between citizens of different states and nations and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Venue in this district is proper under 28 U.S.C. §1391 (a)(2) and (d).

4. Long-arm jurisdiction against the foreign defendants is based upon M.G.L. c. 223A, §3 (a) and (c) and (d).

**The Parties**

5. Plaintiff, J. P. Brentwood Cliveden ("Cliveden") is an individual with a residential address at 6 Whittier Place, Boston, Massachusetts.

6. Defendant CDM Clinical Data Management Deutschland GmbH is upon information and belief, a corporation organized and existing under the law of Germany with a place of business at Hanoversche Str. 149, D-30637 Hanover, Germany. Upon information and belief, CDM is the successor in interest to TEAMworks Communications Systems GmbH.

7. Defendant CDM Clinical Data Management UK Ltd, is, upon information and belief, a corporation organized and existing under the laws of the United Kingdom with a business address at 6 Stirling House, Stirling Road, Guildford, Surrey, UK GU2

7RF. Upon information and belief, TEAMworks UK formerly was known as TEAMworks Clinical Services Ltd.

8. Defendant TEAMworks Clinical Solutions Ltd. is, upon information and belief, a a corporation organized and existing under the laws of the United Kingdom also with a business address at 6 Stirling House, Stirling Road, Guildford, Surrey, UK GU2 7RF. 9. Defendant TEAMworks Clinical Services Inc. ("TEAMworks CSI") is, upon information and belief, a corporation organized and existing under the laws of Delaware with a business address at Princeton Center, 116 Village Blvd. Suite 300, Princeton, NJ. Upon information and belief, TEAMworks CSI is the successor in name and interest to TEAMworks Information Systems, Inc., a US based entity, which, from time to time has maintained business addresses in Mountain View, California and Boston, Massachusetts, including an office at 28 State Street in Boston, and an office at 6 Whittier Place, Boston, MA (Cliveden's residential address) during the period relevant to the facts set forth herein.

10. Defendant TEAMworks Clinical Solutions International Inc. is, upon information and belief, a corporation organized and existing under the laws of Delaware with a business address at Princeton Center, 116 Village Blvd. Suite 300, Princeton, NJ.

11. Defendant TEAMworks Clinical Solutions International Ltd., is, upon information and belief, a corporation organized and existing under the laws of Singapore.

12. Defendant Dr. Thomas Heina ("Heina") is a German citizen with a residential address at 369 Holland Road, #12-01, Allsworth Park, 278640, Singapore.

13. Upon information and belief, all of the TEAMworks entities identified herein are interrelated entities, with interlocking directorates, owned and controlled by Heina, or in which he has an ownership interest, and organized for his benefit and at his behest.

Further, upon information and belief, Heina routinely incorporates TEAMworks entities in various jurisdictions and countries for the purpose of doing business there. Upon information and belief, Heina also disbands and reconstitutes TEAMworks entities under different names to avoid liabilities they accrued in certain jurisdictions.

14. Reach and Apply defendant Merck & Co. ("Merck") is a duly organized corporation engaged, *inter alia*, in the research and development of pharmaceutical products, with a place of business in Whitehouse Station, NJ. Merck is registered to do business in numerous jurisdictions, including Massachusetts, and has transacted business in Massachusetts, including directly with the plaintiff. Upon information and belief, Merck has incorporated a subsidiary in Massachusetts by the name of Merck-Medco RX Services of MA, LLC to do business in this jurisdiction.

**Allegations Pertinent to All Counts**

15. Beginning in late May 2000 and continuing into August 2000, Heina, on behalf of TEAMworks CSI, and Cliveden, entered into negotiations over the terms of Cliveden's future employment with TEAMworks CSI and related entities abroad and in the United States (collectively "TEAMworks").

16. During the period of the negotiations, Cliveden resided and worked in Boston, Massachusetts, where he was then working for IBM. Heina communicated with Cliveden on numerous occasions through e-mails and telephone calls directed to Boston from Germany, the UK and Singapore.

17. Cliveden, when employed by IBM, met personally with Heina in Hanover, Germany, London, Baltimore, MD, and in Boston, MA in connection with a potential relationship between TEAMworks and IBM. These meetings resulted in Heina recruiting

4

Cliveden to work directly for TEAMworks. During the time that Heina recruited Cliveden to work for TEAMworks and, indeed, after Cliveden commenced work for TEAMworks, Heina made no distinction between the German, UK, Singapore and US based entities, or between TEAMworks affiliates and subsidiaries in any other jurisdiction in the US or abroad, repeatedly referring to the companies collectively as "TEAMworks." The stationery and business cards used by TEAMworks employees, wherever based, referred generically to "TEAMworks" and not to any particular entity.

18.   TEAMworks was, and continues to be, engaged in the business of providing technical support, training, and implementation services and of licensing its own specialized software to the pharmaceutical industry to assist in bringing products to market. Cliveden's experience at IBM was in sales and marketing, project management, training, and technical support of computer software used by pharmaceutical companies to undertake data capture in clinical trials. After IBM made an internal business decision to cease deploying its own specialized software and to partner with third party vendors, Cliveden, who preferred working directly with the product, began to explore other job opportunities, including pursuit of employment with TEAMworks. Cliveden was very excited about the TEAMworks software product, and along with five other IBM employees, was convinced to join TEAMworks.

19.   As of June 2000, when Heina recruited Cliveden to become employed at TEAMworks, Cliveden had a total of 20 job possibilities, ranging from positions at large corporations to opportunities at smaller and newer ventures and including a position with IBM's newly created Life Sciences business group. He made clear, during negotiations with Heina, that the TEAMworks job possibility was very attractive, but that he was

concerned about leaving behind a more secure position at IBM, which permitted him to save for retirement through employer-sponsored retirement and pension plans; provided an employer contribution to the retirement and pension plans; and included health, life, travel, and long- and short-term disability insurance and other benefits that TEAMworks could not offer immediately. Cliveden communicated to Heina the fact of his numerous job prospects, his need for assurances by Heina as to the position at TEAMworks, and his need for TEAMworks to match, through salary and reimbursement of personal expenses, the benefits he would be forfeiting if he were to become employed by the company.

20. To induce Cliveden to accept a position with TEAMworks, resign his position at IBM and forfeit other job possibilities, Heina sent to Cliveden in Boston a draft employment agreement, a copy of which is attached as Exhibit A, which included a salary of $160,000 annually, a bonus plan, stock ownership, and reimbursement of business expenses. Heina represented to Cliveden that this agreement was TEAMworks' "standard UK" contact and, as a further inducement to Cliveden, he promised that US-based lawyers shortly would be drafting a similar contract in conformance with US law. Heina represented that TEAMworks lawyers in the United States would provide advice as to the insurance and benefits issues raised by Cliveden and how Cliveden might receive comparable benefits while employed by TEAMworks. As a further inducement to Cliveden to leave IBM and forfeit other opportunities, Heina promised that until and unless TEAMworks could provide such benefits itself to Cliveden under authorized company-sponsored plans, the company would reimburse Cliveden for his health, life, travel, and disability insurance payments and provide him with the equivalent of an employer contribution to a company-sponsored retirement plan.

21. In reliance on Heina's representations as to salary, benefits and the imminence of the contract similar to the one attached as Exhibit A, Cliveden resigned from IBM, and notified other prospective employers with whom he had been negotiating that he was no longer interested in proffered positions.

22. On or about August 22, 2000, Cliveden commenced employment with TEAMworks as a company director, Director of Sales, US, and the Vice President and General Manager of their US office. Cliveden did a substantial part of his work for TEAMworks from his home in Boston and also established its headquarters at 28 State Street in Boston, a "virtual office" set up to receive incoming telephone calls, faxes, and mail, provide back office support if necessary and perform various administrative functions.

23. Upon commencing at employment at TEAMworks, Cliveden leveraged his former customers and professional contacts on TEAMworks' behalf and set up meetings on behalf of TEAMworks to market TEAMworks' products and services. He met with clients on TEAMworks' behalf in the UK, Germany, Switzerland, the Netherlands, Canada, Boston and in numerous other locales in the US. In connection with the establishment of the Boston office of TEAMworks at 28 State Street, he purchased equipment, established and maintained an international call center network to respond to inquiries from potential customers and support requests from current customers, and met with Boston counsel retained by TEAMworks to incorporate in the United States.

24. Cliveden's primary role, as the VP and General Manager of US operations, included, but was not limited to, selling TEAMworks' software and services to pharmaceutical companies, traveling to customer sites, making presentations, writing

proposals, implementing long term pilot trials of the software, and providing support in response to telephone call requests. His work included, but was not limited to, numerous labor-intensive presentations, drafting responses to Requests for Proposals, and following up contacts with large institutions in the pharmaceutical industry, including Merck. Software sales in TEAMworks' industries require a long selling cycle, often requiring twelve to eighteen months of presentations, proposals, meetings and other communications with prospective customers before a contract is signed. Cliveden worked diligently on TEAMworks' behalf to establish the credibility of the company and the product in the United States and to obtain lucrative contracts on the company's behalf.

25. Cliveden's work for TEAMworks and the business relationships he brought with him from IBM and previous employers, resulted in lucrative contracts between TEAMworks, on the one hand, and pharmaceutical and biotechnology companies, including, but not limited to, Genzyme Corporation, ZymoGenetics, Alliance Pharma and Merck.

26. Cliveden, in connection with his work for TEAMworks, incurred expenses, including travel expenses to customer sites, trade shows and to TEAMworks' foreign offices, expenses involved in establishing and running the Boston office, and expenses representing payments made to independent contractors advanced on TEAMworks' behalf – all of which were to be reimbursed by TEAMworks.

27. Cliveden, like many employees at TEAMworks (whether characterized by TEAMworks as an employee or independent contractor) in the US and Europe consistently was paid his salary and reimbursed his expenses late, with Heina representing that funds had already been transferred by bank wire transfer when they had not been, or would be

sent shortly when they were not, or that he would be able to pay after receipt of payments due shortly from customers. Initially the payments were several days late, but later the delays became significantly longer. For instance, Cliveden was paid in May, 2002, for unpaid salary due as of December 31, 2001. Because Cliveden was unaware of his rights as an employee, because of his loyalties to TEAMworks, to Heina and to the product itself, and because of promises of special bonuses for his patience in awaiting payment until payments from customers, Cliveden accepted the late payments. Upon information and belief, Heina, who himself was spending money derived from the TEAMworks contracts on expensive cars, horses, vacations, and other luxuries, strung out Cliveden's payments the longest of any other employee, because the labor laws of the various other countries in which he did business – the UK, Germany, Switzerland, the Netherlands, Singapore, and the Philippines, for instance – would have subjected him and his corporate entities to strict penalties and fines for comparable delays in payments and benefits to resident employees.

28. Heina and TEAMworks staff continued to treat Cliveden as an employee throughout 2002, including him on organizational charts, internal routing charts, contact and "birthday" lists; arranging for him to travel to customer sites and TEAMworks offices in Europe; and requiring his continued commitment to prospecting customers and project management of existing clients.

29. Although Heina was in essence forcing him to work without pay and without prompt reimbursement of the expenses he advanced on behalf of the company while simultaneously assuring him payment would be forthcoming upon payments from customers, Cliveden continued to market the product, run the US based operations, participate in presentations and trade shows, pursue contracts on TEAMworks behalf,

draft proposals, and communicate with clients and prospects, traveling frequently and incurring further expenses on the Company's behalf. He worked long hours, often without break, on TEAMworks' behalf in the United States, Canada, and in Europe.

30. Each time Cliveden reminded Heina that his salary and expense payments were overdue, Heina repeatedly represented to Cliveden that TEAMworks was experiencing short term financial difficulties but that Cliveden would be paid his salary and reimbursed his expenses as soon as TEAMworks received payments from customers. In fact, Heina represented that Cliveden would be paid a bonus for his patience and loyalty.

31. In early November, 2002, Heina and Cliveden met in the UK for the purpose of reviewing past expenses and past salary, and finalizing documentation of Cliveden's future employment and activities that Cliveden would undertake on TEAMworks as Heina once again committed to customers and to Cliveden that he was about to undertake an expansion of the company in the US.

32. On or about November 29, 2002, in response to several e-mails from Cliveden regarding the contract and future activities, Heina represented to Cliveden that he would be traveling to the United States the following week to address these issues. On December 10, 2002, Heina further arranged a meeting between himself and Cliveden to discuss US based staffing and future projects for the coming year.

33. On or about February 2003, Cliveden received from TEAMworks' counsel in Boston, Rob Duggan, a letter accusing him of making unauthorized charges on a TEAMworks credit card and further requiring him to sign an affidavit stating that he was not then an employee of TEAMworks, or had ever been. Upon information and belief,

Heina instructed Duggan to send the letter as a direct result of learning that Cliveden had submitted an affidavit on behalf of Bruce Sharp, an employee living in New Jersey who filed a case against TEAMworks in Germany, to recover unpaid salary and expenses after Heina terminated Sharp's employment.

34. On or about March 2, 2003, after Cliveden refused to sign a false representation as to his own employment status to deprive Mr. Sharp of his rightful salary and expenses, Heina sent Cliveden an e-mail purporting to terminate his business relationship with TEAMworks and any TEAMworks affiliate. In the past, Heina unilaterally and without prior notice similarly had terminated the employment of other employees at TEAMworks, including those, like Cliveden, who had been demanding their accrued salary and unpaid expenses.

35. In addition to the firings, senior staff (like Cliveden, company directors) at TEAMworks were forced to resign, citing constructive dismissal based upon, *inter alia*, chronic delays in the payment of salary, chronic delayed reimbursement of expenses, and chronic delayed and current non-payment of both employer's and employee's pension contributions. Lawsuits against TEAMworks by other employees and independent contractors have been instituted in the UK, in Scotland, in the Netherlands, in Singapore, and in Germany, all ultimately resulting in settlement to former employees and contractors of TEAMworks but only just before trial or comparable hearing and only after the company forced employees to incur the expenses and strain of litigation to receive their rightful salary, expenses reimbursement and, in some cases, mandated pension contribution in accordance with the law of the country in which they were employed.

36. As of the date of Heina's purported termination of his relationship with TEAMworks, Cliveden had not been paid his salary for 14 months and was owed $150,000 in expenses as itemized on Exhibit B.

## COUNT ONE

### Breach of Contract

37. Cliveden repeats and realleges paragraphs 1 through 36 as though fully set forth herein.

38. As set forth herein, Cliveden and TEAMworks had a contract wherein Cliveden agreed to work exclusively for TEAMworks as its Vice President and General Manager of US Operations and such other roles as Heina from time to time designated, and TEAMworks agreed to pay Cliveden at the rate of $160,000 per year, and reimburse him promptly for all expenses incurred on the company's behalf and for his health, life and disability insurance payments.

39. As described herein TEAMworks has breached its contract with Cliveden. by failing to pay his salary for 14 months and failing to reimburse him for $150,000 in expenses.

40. Cliveden, as a result of such breach, has suffered not only the loss of his salary in the amount of $186,000 and out-of-pocket expenses of $150,000, but also suffered consequential damages, including, but not limited to, interest charges on loans and credit card advances necessitated by TEAMworks' failure to pay and reimburse him, damage to his credit rating and loss of his retirement benefits as he was forced to liquidate retirement accounts to pay expenses..

41. As a result of the foregoing, Cliveden is entitled to damages in an amount to be determined at trial, but which includes, at a minimum, $186,000 in unpaid salary, $150,000 in unreimbursed expenses, and consequential damages, together with pre-judgment and post-judgment interest and costs as permitted by law.

## COUNT TWO

### Promissory Estoppel

42. Cliveden repeats and realleges paragraphs 1 through 41 as though fully set forth herein.

43. Cliveden reasonably relied to his detriment on the promises of Heina on behalf of TEAMworks and particularly his repeated promises to pay after May 2002 (when Cliveden finally received back payments owed as of December 2001). The parties conducted themselves as though the draft contract, attached as Exhibit A were in effect, subject only to US based lawyers reviewing the contract for any changes that might have been necessitated by applicable US law.

44. As a result of the foregoing, TEAMworks should be estopped from denying the existence of a contract between TEAMworks and Cliveden for payment of a salary of $160,000 per annum, reimbursement of expenses including insurance payments, and bonus compensation.

45. As a result of the foregoing, Cliveden is entitled to damages in an amount to be determined at trial, but which includes, at a minimum, $186,000 in unpaid salary, $150,000 in unreimbursed expenses, and consequential damages, together with pre-judgment and post-judgment interest and costs as permitted by law.

## COUNT THREE

### Quantum Meruit

46. Cliveden repeats and realleges paragraphs 1 through 45 as though fully set forth herein.

47. Cliveden is entitled to the fair market value of the services he provided on TEAMworks behalf to TEAMworks for which he has not been compensated, together with reimbursement of all expenses incurred while working on behalf of TEAMworks.

48. As a result of the foregoing, Cliveden is entitled to an amount, to be determined at trial, together with interest and costs.

## COUNT FOUR

### Action in Reliance

49. Cliveden repeats and realleges paragraphs 1 through 48 as though fully set forth herein.

50. Cliveden reasonably relied to his detriment on the promises of Heina on behalf of TEAMworks in terminating his employment with IBM and forfeiting other promising job opportunities. He further reasonably relied on Heina's continuing promises to pay him salary and a bonus and to reimburse expenses from May 2002 (when Cliveden finally received back payments owed as of December 2001) until the date of Heina's purported termination of his employment with TEAMworks and continued to work diligently on TEAMworks behalf.

51. As a result of the foregoing, Cliveden is entitled to an amount, to be determined at trial, together with interest and costs.

## COUNT FIVE

### Unjust Enrichment

52. Cliveden repeats and realleges paragraphs 1 through 51 as though fully set forth herein.

53. As a result of the foregoing, Heina and TEAMworks have been unjustly enriched in that they have had the benefit of all of Cliveden's efforts in running the US based operations, the clients, prospects and expertise he brought with him from IBM and elsewhere, and the client contracts he obtained on their behalf, and have applied the money owed to Cliveden for their own use. For instance, upon information and belief, TEAMworks received $400,000 from at least one of the contracts Cliveden was instrumental in procuring. Further, upon information and belief, TEAMworks will receive up to $12 million in connection with its contract with Merck – a contract it never would have obtained but for the efforts and the prior relationships of Cliveden with Merck personnel.

54. As a result of the foregoing, Cliveden is entitled to an amount, to be determined at trial, representing the unjust enrichment of Heina and TEAMworks.

## COUNT SIX

### Termination in Violation of Public Policy

55. Cliveden repeats and realleges paragraphs 1 through 54 as though fully set forth herein.

56. Upon information and belief, TEAMworks terminated Cliveden's employment with it (1) as a result of learning that he had agreed to be a witness for Bruce Sharp in connection with his case against TEAMworks for failure to pay salary and to

reimburse expenses, (2) for refusing to make misrepresentations about his own employment with TEAMworks for the purpose of prejudicing Sharp's case and (3) for advocating for his own right to be paid his salary and expenses.

57. The termination of Cliveden was a violation of public policy.

58. Despite his efforts to mitigate his damages, Cliveden still has suffered losses, in addition to the loss of $336,000 in unpaid salary and unreimbursed expenses as of March 2003, of over $100,000 in lost wages, lost retirement benefits and other damages as a result of the wrongful termination of his employment.

## COUNT SEVEN

### Reach and Apply

59. Cliveden repeats and realleges paragraphs 1 through 58 as though fully set forth herein.

60. Upon information and belief, at least one of the TEAMworks entities has entered into a software licensing and services consulting contract with Merck, which contract requires periodic payments by Merck to TEAMworks. Upon information and belief, TEAMworks has not been paid in full on the contract. Upon information and belief, the value of the contract is approximately $12 million.

61. Reach and apply defendant Merck holds property, right, title or interest of Meridian, which may be reached and applied to satisfy the debt of TEAMworks of Cliveden under M.G.L. 214, §3.

62. As a result of the foregoing Reach and Apply defendant Merck, its agents, servants, employees, assigns, attorneys and other representatives should be enjoined from paying TEAMworks or any entity owned or controlled by Heina or in which Heina has an

16

interest, up to the amount of $436,000, and, after trial, Cliveden should be entitled to an order allowing him to reach and attach at least $436,000, together with interest thereon, owed to TEAMworks by Merck.

WHEREFOR, CLIVEDEN SEEKS:

1. Judgment in his favor against TEAMworks and Heina on Count One in an amount to be determined at trial, together with interest and costs;

2. Judgment in his favor against TEAMworks and Heina on Count Two in an amount to be determined at trial.

3. Judgment in his favor against TEAMworks and Heina on Count Three in an amount to be determined at trial, together with interest and costs;

4. Judgment in his favor against TEAMworks and Heina on Count Four in an amount to be determined at trial, together with interest and costs;

5. Judgment in his favor against TEAMworks and Heina on Count Five in an amount to be determined at trial, together with interest and costs;

6. Judgment in his favor against TEAMworks and Heina on Count Six in an amount to be determined at trial, together with interest and costs;

7. Under Count Seven, a preliminary and permanent injunction enjoining Merck from paying TEAMworks, Heina and or any entity owned or controlled by Heina or in which he has an interest up to the amount of $436,000, so that amount may be used to satisfy the judgment Cliveden expects to obtain against them, and, after trial, an order authorizing Cliveden to reach and apply from monies owed TEAMworks by Merck, the full amount of the judgment.

9. Such other and further relief as may be just and proper.

7. Under Count Seven, a preliminary and permanent injunction enjoining Merck from paying TEAMworks, Heina and or any entity owned or controlled by Heina or in which he has an interest up to the amount of $436,000, so that amount may be used to satisfy the judgment Cliveden expects to obtain against them, and, after trial, an order authorizing Cliveden to reach and apply from monies owed TEAMworks by Merck, the full amount of the judgment.

9. Such other and further relief as may be just and proper.

**CLIVEDEN DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**

J.P. BRENTWOOD CLIVEDEN
By his attorneys,

_____
Jessica Block
BBO#046110
Block & Roos, LLP
60 State Street, 38th Floor
Boston, Massachusetts 02109

Date: September 1, 2004

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSET

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) J. P. Brentwood Cliveden
v. CDM Clinical Data Management Deutschland et al.

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

    ___  I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    ___  II.  195, 368, 400, 440, 441-444, 540, 550, 625, 710, 720, 730,
              740, 790, 791, 820, 830, 840, 850, 890, 892-894, 895, 950.

    _X_  III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

    ___  IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

    ___  V.   150, 152, 153.

    (stamp: 04 11903 JLT)

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)).
   _____

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
   no

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? no
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY? (SEE 28 USC 2403) _____

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC 2284? no

7. DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS (WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C)). YES___ no ___ OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? - (SEE LOCAL RULE 40.1(D)). YES___ no

8. DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF THE DISTRICT? YES___ no ___ (a) .. IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE? _____

9. IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE? Eastern

10. IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE CENTRAL SECTION n/A
    OR WESTERN SECTION N/A

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Jessica Block
ADDRESS  Block & Roos, LLP, 60 State Street, Suite 3800, Boston, MA 02109
TELEPHONE NO. 617/223-1900

(Category.frm - 09/92)

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

J.P Brentwood Cliveden

**DEFENDANTS** CDM Clinical Data Management Deutschland GmbH, CDM Clinical Data Management UK ltd, Teamworks Clinical Solutions Ltd, Teamworks Clinical Services Inc., Teamworks Clinical Solutions Int'l Inc.*

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Suffolk
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** German
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Jessica Block   617/223-1900
Block & Roos, LLP
60 State Street, Suite 3800
Boston, MA 02109

**ATTORNEYS (IF KNOWN)** * Teamworks Clinical Solutions Private Ltd and Dr. Thomas Heina

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates, etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Plaintiff is suing defendants for breach of an employment contract and related tort and contract claims under 18 USC 1332

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23

**DEMAND $** $436,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S)** (See instructions): JUDGE _____   DOCKET NUMBER _____
**IF ANY**

DATE: September 1, 2004

SIGNATURE OF ATTORNEY OF RECORD /s/ Jessica Block

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____