UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

J. P. BRENTWOOD CLIVEDEN

    Plaintiff

    v.

CDM CLINICAL DATA MANAGEMENT
DEUTSCHLAND GmbH f/k/a/ TEAMWORKS
COMMUNICATION SYSTEMS GmbH,
CDM CLINICAL DATA MANAGEMENT UK LTD,
f/k/a TEAMWORKS CLINICAL SERVICES LTD.,
TEAMWORKS CLINICAL SOLUTIONS, LTD,
TEAMWORKS CLINICAL SERVICES, INC.,
TEAMWORKS CLINICAL SOLUTIONS
INTERNATIONAL, INC., TEAMWORKS CLINICAL
SOLUTIONS PRIVATE LTD, and DR. THOMAS
HEINA,

CIVIL ACTION NO. 04 11093 JLT

    Defendants.

and

MERCK & CO., INC.,

    Reach and Apply Defendant.

## OPPOSITION OF J. P. BRENTWOOD CLIVEDEN TO THE MOTION TO DISMISS OF CDM CLINICAL DATA MANAGEMENT UK LTD, f/k/a TEAMWORKS CLINICAL SERVICES LTD, TEAMWORKS CLINICAL SOLUTIONS, LTD, AND TEAMWORKS CLINICAL SOLUTIONS PRIVATE LTD

### Introduction

Plaintiff J. P. Brentwood Cliveden (Cliveden) submits this opposition to the motion to dismiss filed by three of the "TEAMworks" entities named in this lawsuit.

By way of background, Cliveden initiated this action on September 1, 2004, for breach of contract, action in reliance, promissory estoppel, quantum meruit, unjust enrichment and

termination of employment in violation of public policy arising out of his employment in Massachusetts, from August 2000 to March 2, 2003, with a group of companies all known collectively as "TEAMworks." Cliveden alleges in the complaint, verified through his own affidavit, and submits other affidavits to this Court demonstrating that defendant Dr. Thomas Heina ("Heina"), a director of each and every TEAMworks entity, exercised pervasive control over all of the named corporate defendants. Accordingly, these entities are really his alter-ego.

The allegations of the complaint and the affidavits also demonstrate that Heina is the primary beneficiary of monies earned by those companies (although from time to time his wife, Martina Heina, and his girlfriend, Anna Higgins, have been named minority shareholders); that a number of the "TEAMworks" companies have been renamed or reconstituted or are simply shell corporations with no employees or assets other than phone systems designed to redirect calls to Singapore; that Heina has engaged in a pattern and practice of forming new interrelated companies with himself as director, often at the same locations of existing companies, for no apparent purpose except to escape liability to employees and vendors to whom money is owed by the existing companies; and that, in essence, the "TEAMworks" entities are all part of one and the same company. The complaint, affidavits and attachments thereto further demonstrate that the TEAMworks entities did not preserve any corporate separateness.

Defendants TEAMworks Clinical Services, Inc., TEAMworks Clinical Solutions International, Inc. (collectively TEAMworks New Jersey), CDM Clinical Data Management Deutschland GmbH f/k/a/ TEAMworks Communication Systems GmbH (TEAMworks Germany) and Heina have submitted to the jurisdiction of this Court. CDM Clinical Data Management UK Ltd. (TEAMworks-UK 1"), TEAMworks Clinical Solutions Ltd (TEAMworks UK 2), and TEAMworks Clinical Solutions Private Ltd (TEAMworks-Singapore) have moved to

dismiss on the grounds of lack of personal jurisdiction, asserting that they had no contacts in Massachusetts. However, the affidavits and attachments submitted by Cliveden herewith put forth evidence that TEAMworks Germany, with whom Cliveden conducted business from Massachusetts at the outset of his employment, may be defunct; that TEAMworks New Jersey, the U.S. based entity and apparent successor to the company Heina had planned to form in Boston through Cliveden, is little more than a virtual office to redirect customers elsewhere; that Heina, formerly of Germany, has moved his base of operations to Singapore, ousted the former Managing Director and placed himself and his girlfriend, Anna Higgins in charge; and that TEAMworks Singapore is essentially the successor corporation to the parent company that had extensive contacts with Massachusetts. The affidavits and complaint, now verified, also adduce evidence that TEAMworks Singapore and TEAMworks UK 1 and 2 did business and continue to do business in the United States, including Massachusetts. The evidence demonstrates that the entire group of companies benefited both directly and indirectly from the services of Cliveden, such that it is fair and consistent with substantial justice to hale them into this Court. It was reasonably foreseeable that the global international group of TEAMworks entities could be brought into Court here when they refused to pay Cliveden for the services rendered on their behalf and/or from which the entire group benefited.

For these reasons and those set forth below, the motion to dismiss should be denied.

### Background Relevant to Personal Jurisdiction over TEAMworks Singapore and TEAMworks UK1 and UK2

In his Complaint, Cliveden asserts subject matter jurisdiction of this Court pursuant to 18 U.S.C. § 1332, conferring jurisdiction of federal courts over citizens of different states and nations when the amount in controversy exceeds $75,000, exclusive of interest and costs.

(Complaint, ¶2.) Personal jurisdiction is based upon sections of the long-arm statute, M.G.L. c. 223A, §3 (a) and (c) and (d). (Complaint, ¶4.)

Cliveden's claims arise from his employment with the TEAMworks group of companies as the Vice President and General Manager of North American operations. He worked for the TEAMworks group of companies, including the moving defendants or their predecessor companies, from August, 2000, when he was recruited by Heina to give up his lucrative job at IBM and forfeit other business opportunities, through March 2, 2003, when he was summarily fired by Heina after he refused to disavow a truthful affidavit supporting a fellow employee's claim for unpaid wages and other compensation. (Complaint, ¶¶15-34.) [1] Alas, the same fate was visited upon him. Although TEAMworks paid Cliveden salary and reimbursed his expenses from August 2000 through December 31, 2001, as of the date of his termination (March 2, 2003), Cliveden was owed 14 months of salary and over $150,000 of expenses, which he advanced but which were not reimbursed at the time of his discharge. (Complaint, ¶¶ 27, 36; Cliveden Aff., ¶3). Heina refused to pay or reimburse Cliveden despite his repeated pleas for payment and notwithstanding Heina's promises to pay, including from moneys owed the company by TEAMworks' customers. (Cliveden, Aff., ¶ 3 and Exhibit A and B (moneys owed from Genzyme, according to Heina, "are the funds for your work"). In his Complaint, now verified, Cliveden notes that Heina was spending money derived from the TEAMworks contracts on expensive cars, horses, vacations, and other luxuries during the time he was delaying Cliveden's payments with the excuse of alleged short-term financial difficulties. (Complaint, ¶¶27, 30.)

Cliveden has alleged in his complaint and further demonstrated by affidavit, including through publicly available information, that all of the TEAMworks entities sued in this action are

---

[1] Cliveden has verified all the allegations of the complaint through his affidavit, submitted herewith. Hereinafter, Cliveden's affidavit is referred to as "Cliveden Aff.").

4

interrelated entities, with interlocking directorates (primarily Heina and his girlfriend Anna Higgins, who purported to give an affidavit on behalf of the defendants). The corporate defendants are all owned and controlled by Heina, and, based on the shareholder information publicly available, he has an ownership interest in each. The companies are all organized for his benefit and at his behest. Heina routinely incorporates TEAMworks entities in various jurisdictions and countries for the purpose of doing business there. Heina also disbands and then reconstitutes TEAMworks entities under different names (Complaint, ¶ 13; Cliveden Aff., ¶ 10 and Exhibits G and L ). Both Roger Holden, until recently employed in the UK, and Lance Eminger, until recently employed in Singapore, have submitted affidavits on Cliveden's behalf, attesting to the moneys owed creditors and former employees as of the date of their termination from employment (Holden Aff., ¶7, Eminger Aff.,¶¶ 3-4) thus creating the very strong inference that the newly formed companies, TEAMworks UK 2 and TEAMworks Singapore (the third company in Singapore registered at the same office address) were formed to avoid the liabilities of the existing companies. Lance Eminger, who was ousted when Heina and Anna Higgins moved to Singapore, observes, "I found Dr. Heina to be focused more on ways to take money from his employees, defend against claims or seek out retribution on former employees that he felt wrong him, than he did generating new business or encouraging his employees' careers." (Eminger Aff., ¶7).

**The TEAMworks Entities**

According to a business plan prepared by Heina in 2002 ("the Business Plan"), when Cliveden was still employed by the TEAMworks group of companies, TEAMworks Germany is "the mother company" founded in 1997. (Cliveden Aff., ¶6 Exhibit C). Thereafter, as Heina

states in the Business Plan, "TEAMworks developed . . . into a small global international group company with affiliates in the UK, US, Switzerland, Singapore and Australia. . . All affiliates are 100% subsidiaries of the mother company, TEAMworks Communications Systems GmbH." (Cliveden Aff., ¶4 and Exhibit C). As evident from the Business Plan, TEAMworks' "affiliates" are referred to throughout collectively as "TEAMworks" without regard to any corporate separateness. (Id.)

The "mother company" recently changed its name from TEAMworks Communications Systems GmbH to CDM Clinical Data Management Deutschland GmbH (Cliveden Aff., ¶8, Exhibit E) According to publicly available registration information, after the name change, Heina became the sole director. The previous directors were Heina's wife, Martina Heina, and Henning Lux, who since has terminated his employment with the TEAMworks entities. Mr. Lux lives in Berlin. (Cliveden Aff., ¶10.) Heina recently moved to Singapore with Anna Higgins, his girlfriend, closing the German office (Eminger Aff.,¶2; Holden Aff., ¶ 9). Mailings to the German company have been returned, indicating that is either defunct or no more than a mail-drop address or virtual office without employees. (Block Aff.,¶3 and Exhibit 1).

Through publicly available information, Cliveden has identified the following TEAMworks' entities and their directors. Heina is a director of each and every one of them and, with rare exception (of naming his wife or girlfriend and incorporating lawyer) the only director – hardly the picture of corporate independence.

**Germany:**

TEAMworks Communication Systems GmbH (Incorporation date: DEC 1997) (Directors: Thomas Heina, Martina Heina, Henning Lux)
**1.** TEAMworks Information Systems Gesellschaft für internetbasierte Datenverarbeitungssysteme mbH (Incorporation date: 31 MAR 2003) (Director: Heina)
**2.** CDM Clinical Data Management Deutschland GmbH f/k/a TEAMworks Communication Systems GmbH (change of name: 31 MAR 2004) (Director: Heina)

**United Kingdom:**

6

3. TEAMworks Clinical Services Ltd (Incorporation date: 22 NOV 1999) (Director: Heina)
4. TEAMworks Clinical Solutions Ltd (Incorporation date: 21 JAN 2004) (Director: Heina)
5. CDM Clinical Data Management Ltd f/k/a TEAMworks Clinical Services Ltd. (Change of name: 4 JUN 2004) (Director: Heina)

**United States:**
6. TEAMworks Information Systems Inc (name used but never incorporated in 2000) (Director: Heina)
7. TEAMworks Clinical Services Inc (Heina had planned to incorporate under this name in 2001/2002, but apparently did not)
8. TEAMworks Clinical Solutions Inc (Incorporation date: December 11, 2002) (Director: Heina)
9. TEAMworks Clinical Solutions International Inc (Incorporation date: December 11, 2002) (Director: Heina)

**Switzerland:**
10. TEAMworks Clinical Services AG (Incorporation date: 2000) (Director: Heina)
11. TEAMworks Clinical Solutions AG (Incorporation date: 17 MAY 2004) (Directors: Heina and Tanja Rüttimann)

**Singapore:**
12. TEAMworks Information Systems PTE Ltd (Incorporation date: 22 MAR 2000) (Directors: Heina and Anna Higgins--added in 2003) (Shareholder: 100% TEAMworks Communication Systems GmbH, Hanover, Germany)
13. TEAMworks Clinical Services PTE Ltd (Incorporation date: 27 Apr 2000) (Directors: Heina and Anna Higgins--added in 2003) (Shareholder: 100% TEAMworks Communication Systems GmbH, Hanover, Germany)
14. TEAMworks Clinical Solutions Private Ltd (Incorporation date: 16 DEC 2003) (Directors: Heina, Knut Unger (lawyer), and Anna Higgins--added in 2004).

(Cliveden Aff., ¶10). The primary asset of these companies is the TRIALlink software. This asset originally was held by the German company but may have been moved to Singapore when Heina moved to Singapore. (Cliveden Aff., ¶ 7).

According to available registration information, the officers of TEAMworks-Singapore include Anna Catherine Higgins, whose home address is of 369 Holland Road # 12-01 Allsworth Park Singapore (Director) and Heina (Director), living at the same address as Ms. Higgins. Ms. Higgins owns 1 share and Heina owns 139,999 shares of the company's issued stock. This corporation and the other two Singapore entities, TEAMworks Information Services Pte and TEAMworks Clinical Services Pte (of which Heina is a director with Higgins more recently added as a director and TEAMworks Germany is the sole shareholder) all are registered at the same office address in Singapore, 999G Serangoon Road. (Cliveden Aff., ¶12 and Exhibit G).

7

There are also two companies in the United Kingdom. TEAMworks UK1, the older company incorporated in 1999, presently is listed as "non-trading," which means it is not doing business anymore (Cliveden Aff., ¶19 and Exhibit L) While converting TEAMworks UK1 to "non-trading" status, TEAMworks UK 2, was formed and listed as trading. Documents, which Cliveden has not been able to access on-line, but which are itemized, indicate recent changes of directors, name changes and redemption of shares for cash. Heina is the sole director of each. TEAMworks UK 2 appears to be the successor to the "non-trading" TEAMworks UK 1 for the purpose of Heina conducting business in the UK. (Cliveden Aff., Exhibit L). The financial statement of TEAMworks UK1 for the year ending December 31, 2002 (before Heina and Higgins moved to Singapore) states that the "ultimate controlling party" is the German parent. The financial statement also indicates intra-company group undertakings and moneys owed by "related parties" including the Singapore, Swiss and German offices. (Cliveden Aff., Exhibit L).

**Contacts with Cliveden and with Massachusetts**

During the tenure of his employment, Cliveden maintained the Boston office at 28 State Street as TEAMworks headquarters in the United States. (Complaint, ¶22) He routinely transacted business with the UK employees from his office in Boston and from his home office, including numerous phone calls, e-mails, fax messages exchanged between him in Boston and, in the UK Jeremy Smethurst, Douglas Bain, Viki Wills, Roger Holden, Anna Higgins, Jane Ashton, Leanne Ellison, Paul Messis, Ian Bradbrook, Corinne Robinson, John Habkirk, Bina Desai, Jason Housely, Clare Collins, David Tom, Matt Smith, Paul Andres, Mohammad Asif, Atila Aktas, and Gary Holmes. (Cliveden Aff., ¶ 16). The organizational chart of the Project Management Team shows Douglas Beauregard as a direct report to Cliveden in the United States and as a dotted line report to Viki Wills, the Director of Project Management-UK. Cliveden and Beauregard were an

integral part of that project management team, along with Ian Bradbrook, Director Phase I-UK, Anna Higgins, Clinical Project Manager-UK, and other UK employees. (Cliveden Aff., ¶ 16 and Exhibit I). The chart also demonstrates that employees from different parts of the world worked as a team, without regard to separate corporations. Cliveden also received a salary payment and reimbursement check from the UK entity. (Cliveden Aff., ¶ 17 and Exhibit K).

During Cliveden's employment Heina routinely requested that he fly to the Guildford office in the UK to meet with him and the UK staff. Cliveden spent a large percentage of his time working in the UK office during 2002, including parts of each of the 12 months of that year. During his last trip to the UK office in December 2002, he spent time addressing, signing, and writing notes in holiday cards, jointly signed by Heina, Jeremy Smethurst, and others from the UK office, to be sent to customer and prospects in the United States including Massachusetts. Cliveden made sales visits with UK employees to companies in the US, including but not limited to Genzyme and Biogen in Cambridge, which resulted in a contract with Genzyme. (Cliveden Aff., ¶ 18),

As the Vice President and General Manager of TEAMworks, North America, Cliveden also met frequently with Singapore staff, who would travel to the UK or German office. He also arranged the registration of TEAMworks Singapore staff (along with TEAMworks UK and TEAMworks Germany staff) to represent TEAMworks with him at the annual Drug Information Association meetings held in the US, at which TEAMworks would have a sales exhibit each year. He worked extensively, from Boston, with TEAMworks staff in Switzerland, Germany, the UK, and Singapore to establish TEAMworks global software telephone support line; provided technical support along with colleagues in Switzerland, Germany, and Singapore; and received and responded to calls to the Boston-based toll-free help desk telephone number.

(Cliveden Aff., ¶ 13). Cliveden worked with Lance Eminger, former Managing Director of the TEAMworks Singapore office, to enter about 350 names from business cards sent to Cliveden in Boston from the Singapore office into the TEAMworks customer management and software support databases, which Cliveden managed from Boston and made available to staff in the UK and Singapore. (Cliveden Aff., ¶13 ). Heina had planned to incorporate in Boston, MA and instructed Cliveden to meet with Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, to do so, but abandoned that plan just before he terminated Cliveden's employment, incorporating TEAMworks New Jersey instead. (Cliveden Aff., ¶ 11 and Exhibit F). However, Cliveden has been informed by current TEAMworks employees that TEAMworks employs Carl Rapa, a Massachusetts resident living in Duxbury, MA, to service its sites all over the world. According to Rapa's on-line resume, Rapa coordinates all aspects of product release of TRIALink's application from Massachusetts, New Jersey, England, Germany and Singapore. (Cliveden Aff.,15 and Exhibit H).

Recently Cliveden dialed, from Boston, the Boston contact number TEAMworks uses in the United States. Cliveden set up this toll-free number using MCI Worldcom's services in Waltham, Massachusetts upon Heina's instruction. When he dialed the number, he was immediately connected to TEAMworks Singapore. This number formerly automatically forwarded to the TEAMworks virtual office in Boston at 617-573-5038, during Boston business hours.

**Lack of Corporate Separateness**

During the period Heina was recruiting Cliveden, as well as period that Cliveden was employed, Heina made no distinction between the German, UK, Singapore and US based entities, or between TEAMworks affiliates and subsidiaries in any other jurisdiction in the US or

abroad, repeatedly referring to the companies collectively as "TEAMworks ." (Complaint, ¶17.) Similarly during the period Cliveden worked for "TEAMworks" the companies were all considered to be part of one and the same organization. Roger Holden avers, "[Heina] did not differentiate between the companies located in various countries and, in his conversations with me and others in my presence, routinely referred to all the companies collectively as 'TEAMworks.'" (Holden Aff., ¶2). Company presentations delivered to customers and projects speak of "TEAMworks" with locations in various other cities/countries around the world. (Cliveden Aff., ¶ 7 and Exhibit D1.) The company's current website refers to the various entities as "TEAMworks" in four different countries --- the US, Singapore, the UK and Switzerland. (Cliveden Aff.,¶ 7 and Exhibit D2).[3] It appears that "TEAMworks Clinical Solutions" is the current name of the global group of companies.

Cliveden alleges in the complaint that his work for TEAMworks in the Boston office and the business relationships he brought with him from IBM and previous employers, resulted in lucrative contracts between TEAMworks, on the one hand, and pharmaceutical and biotechnology companies, including, but not limited to, Genzyme Corporation, ZymoGenetics, Alliance Pharma and Merck.  (Complaint,¶ 25). The Merck Contract appears to be on-going.[4] During Cliveden's employment, monies from all offices were sent to the German office and then disbursed as Heina saw fit to the subsidiaries. (Eminger Aff, ¶3).  As Heina has now moved to Singapore, it is likely that the contract monies are being diverted to Singapore either directly or through the German company's bank account. Further discovery is required to determine, *inter alia*, (i) the relationships between all the various "TEAMworks" entities described in plaintiff's

---

[3] The fact that no location in Germany is mentioned in the website further fuels the concern that the parent or "mother" company is no longer functioning and that Heina has moved his base of operations to Singapore.

[4] Counsel for Cliveden has been trying since September, 2004, to get a copy of the contract.. She signed a confidentiality agreement at TEAMworks request, but, as of the date of this filing, the Merck contract has not been produced.

affidavit, (ii) the reasons why there are so many name changes and new incorporations, including multiple companies at the same address with the same shareholders and directors and/or employees, (iii) intra-company transfers, and (iv) whether defendants have, in fact, preserved the integrity of these separate entities, as they assert. The affidavits and publicly available information suggest that all of these entities are essentially part of one and the same company.

## ARGUMENT

The Massachusetts long-arm statute, M.G.L. c. 223A, §3 (a) "specifically authorizes this Court inter alia to exercise personal jurisdiction over a 'person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this state.'" Schaefer v. Cybergraphic Systems, Inc, et al, 886 F. Supp. 921, 924 (D. Mass. 1994) (quoting the statute). Section 3 is a grant of "special" jurisdiction as opposed to "general" jurisdiction, "which requires that the plaintiff prove a substantial nexus between the cause of action and the defendant's in-state activity." Id. However, the term "transacting any business" should be construed broadly. Hahn v. Vermont Law School, 698. F. 2d. 48, 50 (1st Cir. 1983).

Cliveden here has made a specific showing of facts he transacted extensive business with the moving defendants and/or their predecessors in Massachusetts when he was employed as Vice President and General Manager – North America operations doing business from 28 State Street in Boston and from his Boston home. Cliveden has also demonstrated, through affidavits, sufficient to meet his prima facie burden of adducing evidence of jurisdiction, that his efforts benefited all the TEAMworks entities through professional services and contracts he helped procure such that these companies were unjustly enriched by the work performed and his payment of expenses on their behalf.. The expenses for which he was not reimbursed included, without limitation, the expenses of his trips to the UK, payment of all expenses associated with

the corporate headquarters in Boston, and payment for telecommunications with the UK and Singapore, as well as with other foreign offices and employees. Accordingly, exercise of jurisdiction over these entities will not offend the traditional notices of fair play or substantial justice, Hahn, 698 F. 2d at 52. Heina, their agent, intentionally sought out Cliveden, hired him, and failed to pay him knowing that Cliveden was working hard on behalf the "small global international group [of] company[ies]." Cliveden's work in the US was not confined to benefit TEAMworks in the US only, but TEAMworks worldwide. In fact, Heina had not even incorporated a US entity and abandoned plans to incorporate in Boston after he fired Cliveden. Heina should not be allowed essentially to evade the US labor laws by putting his empire of companies out of Cliveden's reach.

Even if the elements essential to obtaining personal jurisdiction under M.G. L. c. 223, §3(a) cannot be met to this Court's satisfaction, the Court may still exercise jurisdiction by piercing the corporate veil between parent and subsidiaries. In federal question cases, the plaintiff must prove that 1) manifest injustice would result if the court upholds the corporate shield, 2) that parent and subsidiary ignored the independence of their separate operations and 3) that the principal had some fraudulent intent in its modus operandi. Schaefer v. Cybergraphic Systems, Inc et al, 886 F. Supp. at 925. In diversity cases, Massachusetts law corporate law governs; the plaintiff, like Cliveden here, does not necessarily have the heavier burden of proving "fraudulent intent" to pierce the corporate veil, but may prove that the parent exercises "pervasive control" over the subsidiary. Id., citing My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619 (1968). Under My Bread Baking Co., the corporate veil may be pierced:

> (a) when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control,

13

>       in the activities of another and there is some fraudulent or injurious
>       consequence of the intercorporate relationship, or (b) when there is a
>       confused intermingling of activity of two or more corporations engaged in
>       a common enterprise with substantial disregard of the separate nature of
>       the corporate entities, or serious ambiguity about the manner and capacity
>       in which the various corporations and their respective representatives are
>       acting.

Id. 353 Mass. 614, quoted with approval in Cabot Safety Intermediate Corp. v. Arkon Safety Equipment Inc. et al., 12 F. Supp. 2d 180 (D. Mass. 1998) (piercing the corporate veil to deny Canadian corporation's motion to dismiss where parent owned the stock of subsidiary, parent used corporate form to withhold discovery, there was an exact identity of officers and both corporations were involved in the same line of business). Cliveden has set forth facts demonstrating active and direct participation by Heina, first through TEAMworks Germany and now through TEAMworks Singapore in the activities of all the TEAMworks entities, blatant disregard of corporate separateness in his public presentations of the company and otherwise, a common enterprise and harmful consequences of the interrelationships, including the not-so-transparent effort to form new companies to avoid the financial obligations of the older ones. All the entities engage in the same line of business. At the very least, the affidavits and exhibits submitted herewith demonstrate "serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting" sufficient to pierce the corporate veil of the defendants moving to dismiss themselves from this case.

In Schaeffer, a case remarkably similar to this one, the plaintiff sued the subsidiary, foreign parent, and directors for gender bias and federal and state law contract and tort claims. Plaintiff alleged, in addition to her gender bias claims, that she was owed $348,000 in commissions and unreimbursed business expenses in connection with work on the foreign parent's Fiji, Christchurch and Australia orders. Id. at 925. The Court found that manifest

injustice would ensue if Schaefer, who lacked the requisite funding, had to "track [the foreign parent] to its lair [Australia]" [5] and further found that the parent and subsidiary ignored the independence of their operations. Because of the lack of diversity jurisdiction and the assertion of federal claims, the plaintiff in <u>Schaefer</u> had to meet the more stringent "veil piercing test" by proving fraud, which she proved by showing that the parent incorporated the US subsidiary in California rather than in Massachusetts, apparently for the purpose of insulating itself more effectively from future litigation in the United States. <u>Id.</u> at 926-7.

The circumstances of <u>Schaefer</u> closely parallel the circumstances present here, compelling the Court to exercise jurisdiction over TEAMworks-UK1 and UK2 and TEAMworks Singapore. Manifest justice clearly would result from requiring Cliveden to file parallel actions in the UK and Singapore to reach the solvent TEAMworks companies, while leaving him to pursue only the "virtual corporations" that have submitted to jurisdiction and that likely have insulated themselves from collection. Like the plaintiff in Schaefer, he does not have the financial wherewithal to finance parallel actions – primarily because of the long-term effect of defendants' failure to pay him his salary or even the substantial expenses he advanced running the US office. And, the affidavits of Holden and Eminger establish that Heina did not maintain corporate independence, firing staff that got in his way and taking over the operations of his

---

[5] Factors to be considered in determining the reasonableness of exercising personal jurisdiction over a nonresident defendant include "the state's interest in providing a forum to the plaintiff, the burden on the defendant, the burden of prosecution elsewhere on the plaintiff, the extent to which the claim is related to the defendant's local activities, and avoidance of a multiplicity of suits. <u>Britton v. D. A. Stuart Company</u>, 2003 U.S. Dist. LEXIS 23305 (N.D. Ill. December 24, 2003), quoting <u>Asahi Metal Indus. Co. Ltd. v. Superior Court of California</u>, 480 U.S. 102 (1987)(plaintiff adduced enough facts in response to motion to dismiss for the court to deny German parent's motion to dismiss). TEAMworks' only real protest relevant to these factors is its assertion that bringing in the UK and Singapore defendants would involve discovery of residents of those countries. Because Cliveden was the only U.S. employee, he would need the testimony of these residents in any event and, in fact, has already submitted affidavits of residents of the UK and Singapore. Cliveden anticipates that TEAMworks, if it is successful at avoiding this Court's exercise of jurisdiction, will thereafter seek to avoid discovery by claiming certain key records are located in its foreign offices.

15

subsidiaries at his whim. Like the foreign defendant in <u>Schaefer</u>, Heina uses his subsidiaries as his alter ego to do business wherever he pleases. <u>Cf.</u> <u>Schaefer</u>, 886 F. supp. at 927.

Because subject matter jurisdiction is based upon diversity and not federal question, Cliveden does not have to show fraudulent intent to pierce the corporate veil, as did the plaintiff in <u>Schaefer</u>, only pervasive control. There is no question that Heina, first through the German "mother" company and now through TEAMworks Singapore, exercises pervasive control over all the subsidiaries, including TEAMworks UK 1 and 2. Moreover he characterizes his "global" empire to the world as a single corporation, operates it as such and appears to form new entities while rendering older ones insolvent or "non-trading", at his discretion. All of the companies are engaged in the same line of business. At last one publicly available financial statement confirms that the parent is the "ultimate controlling" entity.

Cliveden anticipates that Heina will contend TEAMworks 2 and TEAMworks Singapore were not formed until after he fired Cliveden. But Heina's rendering of companies inactive ("non-trading") while forming new ones is exactly the kind of manifest injustice the law seeks to prevent. <u>Schaefer</u>, 886 F. Supp. at 925-7 (where parent incorporated a new subsidiary in California, rendering the Massachusetts company dormant, court found parent "largely disregard[ed] the corporate form and, instead, use[ed] [the subsidiary] as its alter ego to do business in Massachusetts and elsewhere."). <u>See also</u>, <u>Bouley v. American Cyanamid Company et al</u> 1987 U.S. Dist. LEXIS 9631 (Zobel, J.) (D. Mass. October 21, 1987) (denying motions for summary judgment for lack of personal jurisdiction where plaintiff adduced evidence that predecessor-in-name was a shell corporation with no offices, no employees and no assets and where the two corporations shared an post office address and managerial personnel). The affidavits submitted herewith demonstrate that TEAMworks UK 2 is the successor to

TEAMworks UK1, now "non trading," and that TEAMworks Singapore is Heina's new base of operations, and the heir apparent to TEAMworks Germany and the other Singapore companies Heina and Higgins took over when they ousted Lance Eminger.

It is important to recognize that, at this stage, there has been no discovery. Neither the moving defendants nor those who have submitted to jurisdiction have even produced any documents in automatic disclosure. Cliveden has adduced at this stage sufficient evidence that Heina has used and continued to use the corporate form to further his own purposes To allow the solvent defendants to be dismissed from the case, would only serve to allow him to put assets out of Cliveden's reach and to unjustly enrich companies that benefited from Cliveden's services.

## CONCLUSION

For all of the foregoing reasons, the motion to dismiss should be denied and discovery had as to interrelationship of the Heina-controlled TEAMworks entities.

J.P. BRENTWOOD CLIVEDEN
By his attorneys,

/Jessica Block
BBO#046110
Block & Roos, LLP
60 State Street, 38th Floor
Boston, Massachusetts 02109

Date: January 3, 2005

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on 1/3/05

17