UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

J. P. BRENTWOOD CLIVEDEN

    Plaintiff,

v.

CDM CLINICAL DATA MANAGEMENT
DEUTSCHLAND GmbH f/k/a/ TEAMWORKS
COMMUNICATION SYSTEMS GmbH,
11093 JLT
CDM CLINICAL DATA MANAGEMENT UK LTD,
f/k/a TEAMWORKS CLINICAL SERVICES LTD.,
TEAMWORKS CLINICAL SOLUTIONS, LTD,
TEAMWORKS CLINICAL SERVICES, INC.,
TEAMWORKS CLINICAL SOLUTIONS
INTERNATIONAL, INC., TEAMWORKS CLINICAL
SOLUTIONS PRIVATE LTD, and DR. THOMAS
HEINA,

    Defendants.

CIVIL ACTION NO. 04

and

MERCK & CO., INC.,

    Reach and Apply Defendant.

## AFFIDAVIT OF ROGER HOLDEN

ROGER HOLDEN, being duly sworn, deposes and states as follows:

1. I was employed by the company known as TEAMworks in the United Kingdom between August 2002 and April 2004. My title was Head of Clinical Quality Assurance, TEAMworks.

2. During my initial discussions with Dr Heina I was provided with a company overview and was informed by him that the company had offices in the United Kingdom, Germany, the USA and Singapore. He did not differentiate between the companies located in various countries and, in his conversations with me

and others in my presence, routinely referred to all the companies collectively as "TEAMworks."

3. Mr. Brent Cliveden was introduced to me as the Vice President and General Manager of U.S. operations. Dr Heina did not state that Mr Cliveden was a contractor and during Mr Cliveden's employ did not indicate that he was anything other than a company employee.

4. Both the sales literature for the company software known as TRIALink® and the corporate websites of TEAMworks provided Mr Cliveden's contact details which indicated to me that he was a member of staff rather than a third party.

5. On September 12, 2002, I trained Mr Cliveden in Good Clinical Practice, an internal training program for employees of TEAMworks the purpose of which was to gain a basic understanding of clinical practice requirements established by an international group. I signed his certification of training noting that he was an employee of TEAMworks.

6. Soon after I joined TEAMworks it became evident that Dr Heina liked to retain control over all aspects of the business and rarely delegated tasks, which would have been handled more efficiently by those with greater area expertise. During at least the first year of my employment, Dr Heina controlled all financial matters including payment of salaries and expenses. My first month's salary payment was delayed by several days because Dr Heina had not paid sufficient funds to Saffery Champness, the company in London who dealt with payroll.

7. Over time other financial issues became a constant issue for the UK office as we routinely received phone calls from irate vendors and contacts that had not been paid. One example, which I had to deal with, was the office cleaning

company whom in the end refused to clean the TEAMworks UK office until they had been paid outstanding monies.

8. Several companies and individuals were forced to initiate legal action in order to receive payment from Dr Heina for either material, which they had sent to TEAMworks or for services provided.

9. Dr Heina would take advantage of government grants. He announced to the UK office in the summer of 2003 that he would move the remainder of the product development team from Germany to Singapore. Part of this decision was based on the fact that the Singapore government is keen to help companies set up in the region and provide valuable incentives for doing so. Movement of the development team to Singapore ultimately led to the closure of the German office in November 2003.

SIGNED UNDER PAINS AND PENALTIES OF PERJURY

Roger Holden

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on 1/2/05