FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2005 JAN 27  P 4:44

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| J.P. BRENTWOOD CLIVEDEN,<br><br>　　Plaintiff,<br><br>v.<br><br>CDM CLINICAL DATA MANAGEMENT DEUTSCHLAND GMBH f/k/a TEAMWORKS COMMUNICATION SYSTEMS GMBH, CDM CLINICAL DATA MANAGEMENT UK LTD. f/k/a TEAMWORKS CLINICAL SERVICES LTD., TEAMWORKS CLINICAL SOLUTIONS LTD., TEAMWORKS CLINICAL SERVICES, INC., TEAMWORKS CLINICAL SOLUTIONS INTERNATIONAL, INC., TEAMWORKS CLINICAL SOLUTIONS PRIVATE LTD. and DR. THOMAS HEINA,<br><br>　　Defendants,<br><br>and<br><br>MERCK & CO., INC.,<br><br>　　Reach and Apply Defendant. | Civil Action No. 04-11903-JLT |

**DEFENDANTS CDM CLINICAL DATA MANAGEMENT DEUTSCHLAND, GMBH., CDM CLINICAL DATA MANAGEMENT UK, LTD., TEAMWORKS CLINICAL SOLUTIONS, INC., TEAMWORKS CLINICAL SOLUTIONS INTERNATIONAL, INC., TEAMWORKS CLINICAL SOLUTIONS, LTD., TEAMWORKS CLINICAL SOLUTIONS PRIVATE, LTD., AND DR. THOMAS HEINA'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION IN AID OF REACH AND APPLY**

Defendants CDM Clinical Data Management Deutschland, GmbH., CDM Clinical

Data Management UK, Ltd., TEAMworks Clinical Solutions, Inc., TEAMworks Clinical

Solutions International, Inc., TEAMworks Clinical Solutions, Ltd., TEAMworks Clinical

Solutions Private, Ltd., and Dr. Thomas Heina (collectively, the "Defendants")[1] submit this Opposition to Plaintiff J.P. Brentwood Cliveden's (the "Plaintiff") Motion for Preliminary Injunction in Aid of Reach and Apply Attachment.[2]

## INTRODUCTION

Through his Motion, the Plaintiff seeks to enjoin reach and apply defendant Merck & Co. from paying sums under the terms of a contract[3] that are now, or will become, due to Defendant TEAMworks Clinical Solutions, Inc., a company that Plaintiff never worked for, in any capacity. The Court must deny Plaintiff's Motion, however, because his request is contrary to controlling law, because he has failed to offer facts demonstrating the necessity of such action, and because, in reality, this Motion is nothing more than a meritless attempt to embarrass the Defendants in front of an important client, in order to obtain a more favorable negotiating position.

Without responding to every false, misleading or irrelevant statement in Plaintiff's Motion and in the accompanying affidavits, Defendants wish to set the record straight on a

---

[1] Three of the Defendants, CDM Clinical Data Management UK, Ltd., TEAMworks Clinical Solutions, Ltd., and TEAMworks Clinical Solutions, Pte., Ltd., have submitted a Motion to Dismiss for Lack of Personal Jurisdiction. By opposing this Motion, these Defendants explicitly do not submit to jurisdiction, nor to they waive any defense, including lack of personal jurisdiction, which they explicitly reserve.

[2] Plaintiff's counsel did not conduct a conference with counsel for the Defendants as required by Local Rule 7.1(A)(2). Contrary to the statement in counsel's Certificate of Compliance, she did not indicate that she would file a motion for preliminary injunction. Instead, during the phone conferences she identifies, Plaintiff's counsel requested a copy of a contract between Merck & Co. and Defendant TEAMworks Clinical Solutions, Inc. and indicated that, if the contract was produced, she might not oppose the Motion to Dismiss filed by Defendants CDM Clinical Data Management U.K., Ltd., TEAMworks Clinical Solutions U.K., Ltd., and TEAMworks Clinical Solutions Private, Ltd. Also of note, the Certificate refers to conversations that took place in early December, over a month before the present Motion was filed. Counsel did not timely confer with Defendants' attorneys regarding this Motion.

[3] In his brief, Plaintiff misleadingly claims that his counsel "has been seeking a copy of [the contract between Merck and TEAMworks Clinical Solutions, Inc.] since September 2004." In fact, counsel for both the Defendants and Merck agreed to produce the contract, prior to discovery, once appropriate confidentiality safeguards were put in place. After the parties agreed to reasonable confidentiality terms, the contract was produced. The only delay of note occurred due to Plaintiff's counsel's delay in responding to Defendant's proposed confidentiality terms.

2

few salient issues relating to his claim that the corporate Defendants somehow are not separate legal entities.

First, Plaintiff was retained as an independent contractor by TEAMworks Communications Systems, GmbH, which is now known as CDM Clinical Data Management Deutschland, GmbH (the "GmbH."). See Second Affidavit of Dr. Thomas Heina at ¶ 4 (hereinafter, "Second Heina Affidavit"). Although Plaintiff and Defendant Dr. Thomas Heina ("Dr. Heina") had initially discussed an employment relationship with another company, in the end, they agreed that Plaintiff would be engaged as an independent contractor by the GmbH. Id. Plaintiff never worked for any of the other Defendant companies in any capacity, and he certainly never worked for TEAMworks Clinical Solutions, Inc., the only Defendant that is a party to the contract with Merck & Co. See Second Heina Aff. at ¶ 8.

Second, every individual who has submitted an affidavit on Plaintiff's behalf has been paid all sums owed to them. See Second Heina Aff. at ¶ 3(b). In fact, all of the affiants admit in their own sworn statements that they have been fully paid, and most acknowledge that they were fully paid at the time of their separation.[4]

Third, to the extent that some legitimate disputes about compensation did arise, the Defendant company involved addressed and resolved them in a proper manner and in a timely fashion. Plaintiff offers no evidence that any of the Defendants, including Dr. Heina,

---

[4] See Affidavit of Douglas Beauregard at ¶ 3 (acknowledging that he was paid all sums owed); Affidavit of Anders Krogh at ¶ 3 (acknowledging that he has been paid all amounts owed); Affidavit of Victoria Elizabeth Wills (acknowledging that she was "paid in full" upon her resignation); Affidavit of Jeremy Smethurst at ¶ 3 (acknowledging that he has been paid and that all payments to his pension were made after his separation from the company); Affidavit of Douglas Bain at ¶ 3 (stating that he was paid late, but making no assertion whatsoever that he is owed any money); Affidavit of Lance Eminger at ¶ 4 (stating that he has settled all disputes with TEAMworks Information Systems, Pte., Ltd.); Affidavit of Bruce Sharp at ¶ 3 (admitting that he has settled all disputes, but failing to acknowledge that he settled only after receiving notice from the German court that he had not produced sufficient evidence to sustain his claims).

3

have attempted to evade a judgment or settlement. Most of Plaintiff's Motion and accompanying affidavits are nothing more than irrelevant atmospherics designed to distract from the core fact that all employees and contractors have been paid. Despite some cash flow issues which resulted in some late payments, all employees and independent contractors were paid, and the few, limited claims that were raised were properly addressed and resolved. Second Heina Aff. at ¶ 3(b),(c).

Fourth, the only unresolved legal matter pending against any of the Defendants (or their affiliates not named in this suit, which Plaintiff trumpets with fanfare but not substance) is the present claim by Plaintiff.[5] Likewise, there are not now, nor have there ever been, any suits to collect compensation from the Defendants (or their affiliates not named in this suit) by vendors, service providers, suppliers or the like. See Second Heina Aff. at ¶ 3(c).

Finally, contrary to Plaintiff's baseless allegations, each of the corporate Defendants was established for entirely legal and wholly legitimate purposes, and each has been properly maintained as a separate and distinct corporation. Second Heina Aff. at ¶¶ 3(a), 45-63. The corporate Defendants (and their affiliates) most explicitly were not established for any unlawful purpose or to evade the claims of former employees, contractors or other business partners. There is nothing illegal or improper about maintaining a corporate structure that includes a parent and numerous independently operating subsidiaries or affiliates, particularly for an international company in a technical and highly competitive

---

[5] Further, the implication by Plaintiff and other affiants that there have been "numerous" claims by employees or contractors seeking compensation is simply false. In reality, only two other individuals left a company claiming they were owed compensation and filed suit on their claims. One suit, by Lance Eminger, resulted from his own financial mismanagement and was settled within weeks of his demand. The other suit was advanced by another contractor, Bruce Sharp, and settled for a fraction of his initial demand after a German tribunal notified Mr. Sharp that the adduced evidence was inadequate to sustain his claim. Both of these claims are addressed in greater detail in the Second Heina Aff. at ¶¶ 22-26, 36, and in Defendants' Reply in Further Support of their Motion to Dismiss.

4

field. Plaintiff's assertions are long on suspicion but lack any <u>facts</u> showing that the corporate form has been misused, as clearly required to pierce the corporate the veil.

For these reasons, Defendants request that the Court deny the Motion for Preliminary Injunction.

## FACTS

Many of the facts supporting Defendants' position are set forth in the Second Affidavit of Thomas Heina, which accompanies this Opposition, as well as in Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Defendants' Reply in Further Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, and in the Affidavit of Thomas Heina and the Affidavits of Anna Higgins supporting those motions. Defendants refer the Court to those documents for a full discussion of the relevant facts, but also briefly summarize several key facts below:

- The Defendant corporations operate in the biotechnology field, providing highly specialized software, along with technological and clinical support, to aid in the process of testing and bringing new drugs or medical devices to market. Second Heina Aff. at ¶ 14.

- Plaintiff was retained as an independent contractor by the GmbH. Second Heina Aff. at ¶ 8.

- Although Plaintiff and Dr. Heina initially discussed an employment relationship, they ultimately – and explicitly – agreed that Plaintiff would be engaged as an independent contractor with the GmbH instead. Second Heina Aff. at ¶¶ 4,6,7.

- Plaintiff was paid by the GmbH, and performed services exclusively for the GmbH. Plaintiff never performed any work for TEAMworks Clinical Solutions, Inc. or any of the other Defendant companies. Second Heina Aff. at ¶8.

- The contract which Plaintiff seeks to reach and apply is between TEAMworks Clinical Solutions, Inc. and Merck & Co. Second Heina Aff. at ¶ 70.

- Despite repeated requests from the GmbH, Plaintiff failed to provide proper documentation of the contractor services he claims to have performed or the expenses he claims are owed to him. Second Heina Aff. at ¶ 9.

5

- Each of the Defendant corporations is a separate and independent company, created in compliance with applicable laws, for a specific and wholly legitimate business purpose. Second Heina Aff. at ¶ 3(a).

- Each of the Defendant corporations properly maintains its independent identity and all proper corporate formalities, including separate directors, financial records, accounts, tax returns and assets. Allocation of resources between Defendant corporations and loans between them all are properly documented and recorded in the relevant Defendant's accounting records. Second Heina Aff. at ¶¶ 45-63.

- Each of the Defendants uses separate letterhead, business cards, etc. Second Heina Aff. at ¶ 49.

- Plaintiff was well aware that he was retained as an independent contractor by the GmbH. He never questioned, or expressed any confusion about, the fact that he was engaged solely by the GmbH. Second Heina Aff. at ¶¶ 66-69.

## **LEGAL ARGUMENT**

I.  **The Plaintiff's Request For A Preliminary Injunction Must Be Denied Because This Remedy Is Not Available Absent A Judgment On The Underlying Claims.**

The First Circuit has held that a preliminary injunction must be denied where the alleged "debt" is nothing more than the mere *possibility* of a damage award in a plaintiff's favor. See Rare Coin Galleries of America, Inc. v. Vinick & Young, et al., 862 F.2d 896 (1st Cir. 1988); Hunter v. YouthStream Media Networks, Inc., 241 F.Supp.2d 52 (D. Mass. 2002). Plaintiff relies on a basic allegation that he is owed payment for services that he provided to the GmbH - an allegation that GmbH vigorously disputes. Plaintiff fails to show any "debt" whatsoever and, therefore, provides no basis at all for a reach and apply action.

The First Circuit's position on this issue is highlighted by Rare Coin, where the Court examined the circumstances in which a reach and apply remedy is available under Massachusetts law, and considered specifically whether it could issue an injunction pursuant

to Mass. Gen. Laws c. 214, § 3(6) -- the same statute cited by the Plaintiff in the present Motion. See 862 F.2d at 903-04. At the outset, the Court recognized that there "must be . . . an underlying 'debt' as defined in the statute running from the defendant to the plaintiff before this remedy is available." Id., citing H.G. Kilbourne v. Standard Stamp Affixer Co., 216 Mass. 118, 119 (1913). The Court specifically noted that the "term 'debt,' although broadly construed, [does not] include a pending breach of contract suit not reduced to judgment." Id., quoting Kilbourne, ("The word 'debt' has never been made to include the simple possibility of being found responsible in damages…where neither the fact of liability nor the amount can be held affirmatively to exist until a judgment shall have been recovered."). Applying this reasoning, the Court held that "[s]ince the instant action contains contract, tort and statutory claims not reduced to judgment, the remedy of a statutory bill to reach and apply is not available at this stage of the proceedings under Massachusetts law." Id. Accordingly, the Court found the District Court's issuance of a preliminary injunction to be an abuse of discretion, and vacated the injunction. Id. [6/]

In fact, this general principle was reiterated recently by the District Court in Hunter, a case which involved a contract dispute quite similar to the present matter. See 241 F. Supp. 2d at 58. In that case, the Court carefully examined the situations in which an injunction may be issued, and concluded that "contract claims such as [those brought by plaintiff must] be reduced to judgment before a 'debt' is established, since whether liability exists on the part of the defendants is hotly contested and there are disputed issues of fact which must be resolved." Id.

In the present case, Plaintiff has nothing more than a contract claim - and a

---

[6/] As noted above, the Court stated that this principle applies to contract claims such as Plaintiff's, as well as to tort and statutory claims. Id. at 904.

7

vigorously disputed one at that. Indeed, Defendants dispute nearly every substantive allegation Plaintiff makes, including his contention that he was an "employee," whether he is owed any compensation at all, and whether he is owed reimbursement for any expenses. At this early stage of the proceedings, the Court cannot possibly conclude that Plaintiff is entitled to anything at all, let alone a sum certain. In short, both the merits of Plaintiff's claims, and the amount of damages owed (if any), are "hotly contested" and clearly uncertain. Thus, as a matter of law, this Court must refuse to issue a preliminary injunction.

## II.   The Plaintiff's Request For A Preliminary Injunction Must Be Denied Because He Seeks To Reach And Apply The Res Of A Contract Located Entirely Outside Massachusetts.

Plaintiff's request for a preliminary injunction also must be denied because, in addition to failing to show that the contract proceeds he seeks to reach and apply constitute a "debt," Plaintiff seeks to reach a contract, the *res* of which is and always has been located entirely outside of Massachusetts. More specifically, Plaintiff seeks to have a Federal Court, sitting in Massachusetts, reach and apply the proceeds of a contract entered into in New Jersey between TEAMworks Clinical Solutions, Inc. (a Delaware company) and Merck & Co. -- two corporations with primary places of business in New Jersey. No aspect of this contract has ever been performed in Massachusetts, and no contract payments have ever been made by or to any entity in Massachusetts.

Plaintiff has not submitted any case law to support his unique proposition, and conveniently ignores cases which show that jurisdiction would be improper. See Kling v. McTarnahan, 277 Mass. 386, 388-89 (1931) ("Considered as a proceeding *in rem* the stock could not be so applied because the corporation was a foreign corporation, the certificates of shares were not in this Commonwealth, and neither the defendant nor the corporation was domiciled here"); Princeton Capital Finance Co., LLC v. Marketechs, Inc., No. 961535,

8

1999 WL 1318955 *1, *2 (Mass. Super. Feb. 12, 1999) (no jurisdiction over reach and apply defendant whose principal place of business was in Connecticut, where the *res* sought to be reached [payments due to case defendant of its accounts receivable] all took place in Connecticut); *compare with* Stockbridge v. Mixer, 227 Mass. 501, 509-10 (1917) (plaintiff permitted to reach and apply stock in corporation where stock certificates were located in Massachusetts "and within the jurisdiction of our courts"). Because the *res* of the property he seeks to reach and apply has no nexus whatsoever to Massachusetts, Plaintiff's motion for preliminary injunction must be denied.

### III.  A Preliminary Injunction Is Not Appropriate Because Plaintiff Is Not Likely To Succeed On The Merits, Will Not Suffer Irreparable Harm, And The Defendants Stand To Suffer The Greater Harm.

The foregoing analysis makes clear that a preliminary injunction should not issue at this early stage of the proceedings when a judgment in Plaintiff's favor, and any damage award, is speculative at best. Even if this Court were to consider Plaintiff's request for an injunction, however, his request still must be rejected as a matter of fact and law.

The short legal analysis included in Plaintiff's brief misstates the law and notably, relies on a case, Anderson Foreign Motors, Inc. v. New England Toyota Distributor, Inc., 475 F. Supp. 973 (D. Mass. 1979), which the First Circuit has deemed "wrongly decided." See Charlesbank Equity Fund II, et al., v. Blinds To Go, Inc., 370 F. 3d 151, 161 (1st Cir. 2004). Indeed, Charlesbank specifically affirmed that, in cases such as this, where the plaintiff seeks a "freeze order" through a preliminary injunction, a federal court must apply the traditional four-part test. Hence, this Court must consider:

(1) the likelihood of success on the merits;
(2) the potential for irreparable harm if the injunction is denied;
(3) the balance of relevant imposition, *i.e.*, the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and

9

(4) the effect (if any) of the court's ruling on the public interest.

Id. at 162.[7/]  Applying this analysis to the present case, it is clear that a preliminary injunction should not issue.

### A. The Plaintiff Has Failed To Demonstrate That He Is Likely To Succeed On The Merits Of His Claims.

The Defendants vigorously dispute that Plaintiff will succeed on the merits of his claim. Contrary to Plaintiff's allegations, he was never an employee of any of the Defendants. Rather, Plaintiff was an independent contractor retained by the GmbH. Second Heina Aff. at ¶ 8. His monthly fee was paid by the GmbH and he was responsible for his own taxes and withholdings. Plaintiff was informed at the beginning of his engagement that he would be paid for deliverables, meaning some type of revenue generating contract or specifically approved work on other assignments. Beginning in approximately January 2002, because he failed to develop business or secure contracts with customers, he was no longer paid. Plaintiff was requested to provide descriptions of the work he performed in order to determine what amount, if any, was due to him, but he never did so. Second Heina Aff. at ¶ 10.

Plaintiff's claim for expenses is equally meritless. Plaintiff understood that he was responsible for getting his expenses approved and properly documenting them, and yet he failed to do so. Plaintiff was asked, on several occasions, to produce receipts and back-up documentation for his claimed expenses, but he never did so. Second Heina Aff. at ¶ 9.

---

[7/]  Notably, although the court in Charlesbank did not reach the question of whether a preliminary injunction is appropriate before a judgment has been obtained, the decision nonetheless suggests that it is not. In particular, the court discussed a U.S. Supreme Court decision, Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999), which held that the district court "had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages where no preexising lien or equitable interest had been claimed." Id. at 333.

The Defendants, moreover, have demonstrated that Plaintiff did not have a contract and was paid for all documented, authorized services he performed for the GmbH. See Second Heina Aff. at ¶¶ 9-10. Even if Plaintiff were to prevail, the amount he claims is greatly exaggerated, and includes sums that already been paid or, alternatively, that were not earned by Plaintiff and/or were not properly documented or recoverable as a matter of law.[8/] In sum, Plaintiff fails completely to demonstrate a likelihood of success on the merits of his claim and, therefore fails to satisfy the first element required for a preliminary injunction.

### B.  Plaintiff Fails To Show That He Will Suffer Irreparable Harm Absent A Preliminary Injunction.

Plaintiff has failed to make the required showing of irreparable harm because he seeks only pecuniary damages, thus undermining any argument regarding the potential for "irreparable harm." The First Circuit highlighted this well-settled point in Charlesbank, where the Court based its refusal to issue a preliminary injunction on plaintiff's failure to show irreparable harm. See 370 F. 3d at 162. In that case, as is true in the instant situation, the plaintiff sought "an award of pecuniary damages." Id. In assessing the plaintiff's claim, the Court stated that "[i]rreparable harm most often exists where a party has no adequate remedy at law." Id. The Court then denied plaintiff's motion, reasoning that, in light of the fact that a monetary award "is all [the plaintiff would] be entitled to receive" and "will make it whole," there could be no showing of irreparable harm. Id. This analysis holds in the present case -- Plaintiff seeks only pecuniary damages, and thus is not at risk of irreparable injury.

---

[8/] The damage figure Plaintiff seeks includes amounts which he is not entitled to recover, including (incredibly) the "costs of service of process upon foreign defendants and discovery related costs" -- notwithstanding the fact that *the foreign defendants accepted service* and Defense counsel has agreed, at Plaintiff's counsel's request, *to pay the costs of written discovery produced by Plaintiff.*

11

Plaintiff tries to manufacture an argument, with bombastic flair, that he will be irreparably harmed if the injunction does not issue by asserting that the Defendant corporations are really just the alter ego of the individual Defendant Thomas Heina and that, he "will literally have to chase the defendants around the world" in order to secure payment. Affidavit of J.P. Brentwood Cliveden in Support of Application for Preliminary Injunction at ¶ 2.

Both of these assertions are patently false. First, as discussed in detail in Dr. Heina's Second Affidavit and in Defendants' Reply Memorandum in Support of their Motion to Dismiss, each of the corporate Defendants is a legally formed, duly maintained, and separate entity. There simply is nothing illegal about creating and maintaining parent, subsidiary or affiliate companies. Contrary to Plaintiff's wild supposition, the separate corporate Defendants here have been created to serve specific and wholly legitimate business purposes and to comply with the laws of the countries in which they are incorporated and operate. See Second Heina Aff. at ¶ 3(a), 45-63.

Moreover, there is absolutely no evidence to support Plaintiff's claims that, should he prevail in this case, he will not be paid. Indeed, Dr. Heina, on behalf of the GmbH, has repeatedly informed Plaintiff (as confirmed in email messages), that he would pay Plaintiff for any authorized services he performed and for all approved and documented expenses. See Second Heina Aff. at 9-10. In fact, Dr. Heina and others have requested on several occasions that Plaintiff submit appropriate documentation of his work, and expenses for reimbursement, but Plaintiff never did so before initiating this litigation. See id.

Similarly, Plaintiff's own submissions to this Court provide no indication whatsoever that, should he prevail, he will not be paid. Every affidavit submitted by

Plaintiff in support of his Motion affirms that each affiant was, in fact, paid all sums owed to him or her. See Affidavit of Douglas Beauregard at ¶ 3 (acknowledging that he was paid all sums owed); Affidavit of Anders Krogh at ¶ 3 (acknowledging that he has been paid all amounts owed); Affidavit of Victoria Elizabeth Wills (acknowledging that she was "paid in full" upon her resignation); Affidavit of Jeremy Smethurst at ¶ 3 (acknowledging that he has been paid and that all payments to his pension were made after his separation from the company); Affidavit of Douglas Bain at ¶ 3 (stating that he was paid late, but making no assertion whatsoever that he is owed any money); Affidavit of Lance Eminger at ¶ 4 (stating that he has settled all disputes with TEAMworks Information Systems, Pte., Ltd.); Affidavit of Bruce Sharp at ¶ 3 (admitting that he has settled all disputes but failing to acknowledge he settled his claim only after receiving notice from the German court that the evidence he had submitted was inadequate to sustain his claims). Of course, the affidavits omit to mention that many of these individuals were fired or disengaged for poor performance, or that certain payments were delayed due to a legitimate dispute regarding the specific amounts owed. In the end, however, it is clear that every person was in fact paid, even where there was a dispute as to the amount owed. Thus, quite contrary to Plaintiff's desired effect, these affidavits actually demonstrate that Plaintiff is not at risk of suffering irreparable harm and that, should he prevail, he will be paid. Hence, Plaintiff fails to show why issuance of a preliminary injunction is necessary or proper.

Finally, Plaintiff's assertion that he will have to "chase the defendants around the word" is disingenuous, at best, given that he has already litigated this case, against many of the same defendants, in the United Kingdom. Plaintiff initiated a lawsuit against TEAMworks Clinical Services, Ltd. (now known as CDM Clinical Data Management UK,

Ltd.) and other affiliated companies in June 2003 and, with full representation of counsel, litigated it through discovery to the eve of a potentially dispositive hearing, when, mysteriously, he withdrew this case entirely. The U.K. tribunal found his actions so impertinent and irresponsible that it awarded attorneys' fees to counsel for the Defendants. In fact, it is now Defendant CDM Clinical Data Management UK, Ltd. that must chase the Plaintiff in order to recover the sum he owes, approximately $18,000 (in U.S. dollars) awarded to it as a result of the Plaintiff's frivolous legal action in the U.K. See Second Heina Aff. at 13 and Order of the UK Employment Tribunal, attached thereto.

### C. The Balance Of Harms Weighs In Favor Of The Defendants.

Although failure of the Plaintiff to satisfy any element of the four-part test is sufficient to deny a preliminary injunction, it bears mention that the Defendants would suffer great harm if such an injunction is granted. As noted in the opening of this brief, it is obvious that part of Plaintiff's motive in bringing this action is to embarrass the Defendants in front of an important client, Merck & Co., in order to improve their bargaining strength. Both Plaintiff's brief in support of this Motion and Plaintiff's Opposition to the Motion to Dismiss, along with the Plaintiff's self-serving affidavits, are rife with statements which are unfounded, irrelevant and misleading. It is apparent that the purpose of these purported assertions is simply to paint an unflattering picture of Dr. Heina and the corporate Defendants in an apparent attempt to damage the relationship with Merck & Co. and thereby gain a stronger bargaining position in this dispute. The issuance of a preliminary injunction, with the imprimatur of the Court's prediction of the outcome of this litigation, would place the contractual relations between Merck & Co. and TEAMworks Clinical Solutions, Inc. at risk.

Additionally, depriving TEAMworks Clinical Solutions, Inc. of the contract with Merck & Co. would severely harm the company by depriving it of funds needed for its operations. This is especially pertinent where (1) Plainitff never worked at all for TEAMworks Clinical Solutions, Inc., nor could he have, since it was created after he stopped producing work; and (2) and the contract with Merck & Co. was obtained well after he stopped working for the company -- and through none of his efforts. Thus, it is clear that a balancing of the harms weighs in favor of denying the injunction sought by Plaintiff.

### D.   Public Policy Favors Denial Of The Preliminary Injunction.

For the reasons discussed in Part I of this brief, this Court must not set a precedent of issuing a preliminary injunction on a reach and apply action regarding claims that have not been decided. Here, Plaintiff seeks a preliminary injunction, despite the fact that his claims, and the damages he seeks, are entirely speculative. Condoning this approach would lead to overuse of this extraordinary remedy, and result in more litigation. It also would burden business and strain contractual relationships.

## CONCLUSION

For the reasons set forth above, the Defendants respectfully request that the Court deny Plaintiff's Motion for a Preliminary Injunction in its entirety.

Respectfully Submitted,

CDM CLINICAL DATA MANAGEMENT DEUTSCHLAND, GMBH, TEAMWORKS CLINICAL SOLUTIONS INTERNATIONAL, INC., TEAMWORKS CLINICAL SOLUTIONS, INC. TEAMWORKS CLINICAL SOLUTIONS, LTD., TEAMWORKS CLINICAL SOLUTIONS PRIVATE, LTD. AND CDM CLINICAL DATA MANAGEMENT U.K., LTD. AND DR. THOMAS HEINA

By their attorneys:

/s/ Henry A. Sullivan
Henry A. Sullivan (BBO #544371)
Lisa A. Weinman (BBO #648057)
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY and POPEO, P.C.
One Financial Center
Boston, MA  02111
(617) 542-6000

DATED: January 27, 2005

## CERTIFICATE OF SERVICE

I hereby certify that this 27th day of January, 2005, the foregoing *Defendants Opposition to Plaintiff's Motion for Preliminary Injunction in Aid of Reach and Apply Attachment* was served upon all counsel in this matter by mailing copies thereof, first class postage prepaid, addressed to:

Jessica Block
Block & Roos, LLP
60 State Street, Suite 3800
Boston, MA  02109

Robert V. Lizza
Holland & Knight, LLP
10 St. James Avenue
Boston, MA  02116

/s/ Lisa A. Weinman
Lisa A. Weinman

LIT 1499378v3

16