UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB -9 P 4: 42

U.S. DISTRICT COURT
DISTRICT OF MASS.

J. P. BRENTWOOD CLIVEDEN

    Plaintiff

v.

CDM CLINICAL DATA MANAGEMENT
DEUTSCHLAND GmbH f/k/a/ TEAMWORKS
COMMUNICATION SYSTEMS GmbH,
CDM CLINICAL DATA MANAGEMENT UK LTD,
f/k/a TEAMWORKS CLINICAL SERVICES LTD.,
TEAMWORKS CLINICAL SOLUTIONS, LTD,
TEAMWORKS CLINICAL SERVICES, INC.,
TEAMWORKS CLINICAL SOLUTIONS
INTERNATIONAL, INC., TEAMWORKS CLINICAL
SOLUTIONS PRIVATE LTD, and DR. THOMAS
HEINA,

    Defendants.

CIVIL ACTION NO. 04 11903 JLT

and

MERCK & CO., INC.,

    Reach and Apply Defendant.

### SECOND AFFIDAVIT OF J. P. BRENTWOOD CLIVEDEN IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

J.P. BRENTWOOD CLIVEDEN, being duly sworn, deposes and states as follows:

1.    I make this affidavit in response to the contentions raised by the defendants in opposition to my application for a preliminary injunction.

**I Was An Employee at TEAMworks and At No Time Was My Salary Contingent Upon Alleged "List of Deliverables"**

2.      It is patently false that my employment was contingent upon providing a list of deliverables to Dr. Thomas Heina ("Heina"). The first time he even asked for such a list was on January 6, 2003, after I had been working for the TEAMworks group of companies for two and a half years, and only after he found out that I had supported Bruce Sharp's claim for compensation in the German court through a sworn statement and thereafter refused to give false testimony to retract my statement in Mr. Sharp's case. Heina raised this same false defense to Sharp's claim for compensation, i.e., that he was an independent employee required to produce a list of "deliverables," notwithstanding his letter of employment to Sharp identifying him as an employee at will, not an independent contractor, and notwithstanding the monthly requests for payment by Sharp and Heina's repeated promises that it would be forthcoming. I refer to the second affidavit of Mr. Sharp submitted on my behalf.

3.      In Automatic Disclosure, TEAMworks produced only 50 documents. I, on the other hand, produced over 3000 documents, including e-mail and written correspondence with Heina and other TEAMworks employees. Other than the January 6, 2003 demand (the only demand annexed to Heina's Second Affidavit), there is not, prior to that date, in the entirety of our communications, a single request for a list of deliverables, for receipts or any other supporting documentation. Heina knew perfectly well all the work I was doing and the substantial difficulty that his late payments were causing me (see, e.g., Exhibit 1). Heina never told me, in response to all my requests for payments, until January 6, 2003 and only after he decided to retaliate upon learning of my support of Bruce Sharp, that my compensation was contingent upon "deliverables" as he now contends.

4.  However he now wants to characterize our relationship, the fact is that, as described in my earlier affidavit, Heina agreed that until a company was formally incorporated in Boston, which he represented he would do promptly, my salary as an employee would consist of $160,000 annually, reimbursement of the employer's share of Social Security, reimbursement of the cost of purchasing life, health and disability insurance policies and a pension plan equivalent. I regularly kept summaries of my phone conversations through an Information Management System. I attach hereto a summary of my notes of my final conversations with Heina just before I started employment (Exhibit 2). The e-mail from Heina dated August 3, 2000, attached again here as Exhibit 3) in which he asked for my address for inclusion in the employment contract he promised to prepare came at 5:39 PM *after* his request for a phone call to resolve outstanding issues (also attached as Exhibit 3 and showing a "sent time" of 4:27 AM) and after the phone call of even date (12:35 PM) in which we resolved the outstanding issue, thus further evidencing that we came to agreement on all terms. There was full agreement on the terms of my employment.

5.  Although Heina usually simply sent the money to me by wire transfers (always late) (Exhibit 4), I did retain an e-mail in which he itemized his payment to me (also included as Exhibit 4). That itemization included life insurance, disability insurance, expenses, social security, a salary payment and other expense reimbursements, exactly as previously agreed. (See Exhibit 4). Nothing about that payment or any of the others indicates that it was in connection with any "deliverable" and, in fact, the salary is not tied to any project. It simply is not credible that Heina would pay Social Security reimbursement, life insurance, pension plan equivalent, disability insurance reimbursement and the like if this were related to a "deliverable."

6.  As described in my earlier affidavit, Heina did not terminate our relationship until March 3, 2003, all the while promising to me the payments upon which we agreed in 2000.

Nothing changed from August 2000 to March 3, 2003. There is no e-mail or other notation in the entirety of our correspondence indicating that our relationship was other than one of employee and employer or that as of May 2002, when Heina made the last payment to me, our agreement changed in any way. Heina continued to promise me payment throughout. Heina's assertion now that he did not understand the word "salary" to be a payment to an employee is as absurd as his contention in Bruce Sharp's case that he did not understand English! Heina's contention that he has "limited" experience in the U.S. is equally not credible, as he did business, among other companies, with Bayer, Eli Lily, Wyeth Ayerst, Genzyme, Zymogenetics, Roche, Novartis, J&J and perhaps others of which I am not aware. As the Court can see, our extensive correspondence is all in English.

7. As to my title, Heina introduced me initially as the Director of US Operations. Attached as Exhibit 5 is his e-mail introducing me as such to a client, Organon. I submit that Heina would not have hired the Director of U.S. Operations as an independent contractor subject to a list of "deliverables." Later, in literature created and distributed by the company in the UK, I was identified as a Vice President. (Exhibit 6) The business cards similarly were printed for me in the United Kingdom -- I certainly did not have the capacity to produce them myself. As to Heina's claim that this title was unauthorized, please note that even our lawyers, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo referred to me this way in bills sent to me in that capacity -- bill which I then sent along to Heina for payment. (Exhibit 7). Other former employees previously submitted affidavits attesting that Heina referred to me as a Vice President in introductions to clients and Heina signed an employment verification (Attachment L to my first affidavit) identifying me as a Vice President. As to using as a company name TEAMworks Information Systems, Inc., that was the name on the original contract sent to me by Heina

(Complaint Exhibit A). Later, Mintz Levin was in the process of incorporating the company in the U.S. as TEAMworks Clinical Services and I instructed Heina's secretary to create a new template in anticipation of that change.

8. Heina offered employment to other employees in a similar fashion, representing, as he did to me, that they would receive more formal contracts after a "small interim period" until "we got the lawyers going." (Exhibit 8). Thereafter, of course, he never followed up with the contracts he promised.

9. Over the two and a half years that I worked for TEAMworks, I sent timely, detailed expenses reports on a monthly basis and had available substantial documentation, all of which has been produced to defendants and samples of which have been produced to this Court. These expenses reports – 259 of them – are too voluminous to append to an affidavit, but include the expenses of running the headquarters, phone and other telecommunications bills, travel expenses incurred solely for the benefit of TEAMworks, etc. All of these items were timely submitted and described to Heina. To refuse to pay even for these expenses incurred all for the benefit of TEAMworks and not personally (totaling $130,000, not including reimbursement of Social Security, life insurance and pension equivalent) is unconscionable. Heina received the expense reports without protest as to their format, although he once asserted that he lost them, only to recover them shortly thereafter, as I sent copies not only to Heina but to his wife, Martina. (Exhibit 9).

10. In the latter part of 2002, after his May 2002 payment, Heina promised me repeatedly that I would be paid, from monies owed to the company by Genzyme without ever mentioning that I furnish a list of "deliverables." (Exhibit10). I know that Genzyme, which was

5

one of the contracts I helped to procure, did pay TEAMworks after that date, yet Heina failed to issue any further payments to me in violation of his earlier promise on which I relied.

11.     I am aware that the following employees have asserted claims for nonpayment against the TEAMworks companies and Heina: Francss Loh, Resh Padilla, and Madlen Exner in addition to Jeremy Smethurst, Lance Eminger and Bruce Sharp.

### I Will Be Irreparably Harmed Without the Injunction.

12.     Heina's suggestion that TEAMworks will pay a judgment is not to be believed. He has made so many promises of payment that have not been fulfilled and clearly runs all his operations entirely dependent upon cash flow from one contract to the next. Attached as Exhibit 11 are further e-mails, in addition to those already submitted, showing how first he promised payment after J&J paid, then he instructed me to keep the payment quiet "to prevent that everyone expects to be paid immediately," then he assured payment from a Novartis contract and then he assured us that wire transfers had been made when in fact they had not. Based on these documents and all the others submitted in connection with this affidavit, my previous affidavits, the supporting affidavit of my colleagues and the publicly available information regarding the intracompany transfers of the TEAMworks related companies, there is grave danger that Heina will find a way to avoid paying a judgment entered in a United States court by moving the money out of reach. As I explained in my earlier affidavit, Heina strung me along more than the others because he felt himself exempt from US Laws and his debt to me is far greater than any of the other debts he settled at the eleventh hour prior to an evidentiary hearing.

13.     Finally, regarding the proceeding in the United Kingdom, in that tribunal, Heina challenged jurisdiction and asserted my claim was untimely under UK law. On advice of counsel, I agreed to withdraw the claim there and file one in the United States. The tribunal

never ruled on the merits of my claim but assessed costs because it determined we should have notified respondents earlier of the withdrawal of the claim.

SWORN TO UNDER PAINS AND PENALTIES OF PERJURY this 9th day of February, 2005.

_____
J. P. BRENTWOOD CLIVEDEN

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on 2/9/05

_____